1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
                                    AT SEATTLE
9

10    DOUGLAS ENGLER,                         CASE NO. C15-1873JLR

11                   Plaintiff,               ORDER

12           v.

13    CITY OF BOTHELL, et al.,

14                   Defendants.

15                          I.    INTRODUCTION

16          This matter comes before the court on motions for summary judgment by

17    Defendants City of Bothell ("the City") (City Mot. (Dkt. # 29)) and Wells Fargo Bank,

18    N.A. (WF Mot. (Dkt. # 46)).  The City and Wells Fargo (collectively, "Defendants") seek

19    summary judgment and dismissal of Plaintiff Douglas Engler's complaint.  (City Mot.;

20    WF Mot.; *see also* Compl. (Dkt. # 1-1).)  Wells Fargo also seeks summary judgment on

21    its counterclaim for violation of Washington's anti-SLAPP ("strategic lawsuits against

22    public participation") statute, RCW 4.24.500-.520.  (WF Mot. at 17-21; *see also* WF Am.

ORDER- 1

1 Answer (Dkt. # 36) ¶¶ 10.12-10.13.)  Mr. Engler opposes both motions.  (Resp. to City

2 (Dkt. # 37); Resp. to WF (Dkt. # 49).)  Having considered the submissions of the parties,[1]

3 the balance of the record, and the relevant law, the court GRANTS the City's motion for

4 summary judgment (Dkt. # 29) and GRANTS in part and DENIES in part Wells Fargo's

5 motion for summary judgment (Dkt. # 46) as detailed herein.

6                                    **II.    BACKGROUND**

7          This case arises out of Mr. Engler's unsuccessful attempt to cash a check at Wells

8 Fargo on July 10, 2015.  (*See generally* Compl.)  On April 30, 2015, Mr. Engler posted

9 bail in the amount of $10,100.00 for Anastasia Logan.  (Rosenberg Decl. (Dkt. # 30)

10 ¶¶ A-B, Exs. A-B.)  Because Ms. Logan was detained in Lynnwood, Mr. Engler paid that

11 bail in cash to the Lynnwood Jail.  (*Id.*; Keogh Decl. (Dkt. # 31) ¶ 5.)

12         Upon exoneration of the bail, the City provided Mr. Engler an uncertified check

13 dated July 1, 2015, in the amount of $10,000.00.[2]  (Rosenberg Decl. ¶ C, Ex. C at 1;

14 Keogh Decl. ¶ 7.)  On July 10, 2015, Mr. Engler visited a Wells Fargo branch in

15 Redmond, Washington, in hopes of redeeming the check from the City.  (Engler Decl. at

16 1.)  Mr. Engler, who was not a Wells Fargo customer, provided the check and his driver's

17 license to the teller, who required additional identification from Mr. Engler.  (*Id.* at 2.)

18

19 _____

20          [1] None of the parties have requested oral argument, and the court finds it unnecessary.
*See* Local Rules W.D. Wash. LCR 7(b)(4).

21          [2] The $100.00 difference between the amount deposited and the amount returned to Mr.
22 Engler via check is apparently an administrative cost, and Mr. Engler does not assert that the
amount was improper.  (*See* Compl.)

1  That additional identification included a fingerprint, which Mr. Engler was unwilling to

2  provide.  (*Id.*)

3         The teller's insistence that Mr. Engler provide his fingerprint was in accordance

4  with Wells Fargo's policy for noncustomer transactions.  (Brown Decl. (Dkt. # 41) ¶ 11,

5  Ex. H.)  That policy requires that before processing "check-cashing transactions

6  presented by noncustomers, regardless of the amount," a Wells Fargo employee obtain

7  two forms of identification "*and* a fingerprint on the item."  (*Id.*)  Mr. Engler spoke with

8  bank manager Japjee Walia and received a copy of the noncustomer transaction policy,

9  but he was nonetheless dissatisfied.  (Brown Decl. ¶ 11; Engler Decl. at 2-3.)  Mr. Walia

10 also provided Mr. Engler with the contact information for Katy Hood, who is apparently

11 Mr. Walia's superior at Wells Fargo.  (Engler Decl. at 3.)

12        Mr. Engler returned to the lobby of the bank and called Ms. Hood to discuss Wells

13 Fargo's noncustomer transaction policy.  (*Id.*)  In the meantime, Mr. Walia telephoned

14 the police because Mr. Engler "refus[ed] to leave the premises when Wells Fargo would

15 not cash his check without two forms of identification."  (Walia Decl. (Dkt. # 43) ¶ 2; *see*

16 *also* Brown Decl. ¶ 12, Ex. I ("911 Call Table") at 1.)  Mr. Walia attests that he made that

17 call not out of malice, but "based on an honest belief that Wells Fargo had the right to ask

18 for help from the police in getting Mr. Engler to leave."  (Walia Decl. ¶ 2.)

19        Officer Davin Alsin of the Redmond Police Department arrived during Mr.

20 Engler's call with Ms. Hood.  (Engler Decl. at 4; *see also* 911 Call Table at 1-2.)  He

21 concluded that Mr. Engler's check was not fraudulent and that there was no crime

22 committed.  (911 Call Table at 1.)  Mr. Engler confirmed with Officer Alsin that he was

ORDER- 3

1  free to leave and left Wells Fargo.  (Engler Decl. at 4.)   To date, Mr. Engler apparently

2  has not cashed or otherwise redeemed the check.

3        Mr. Engler filed this lawsuit in King County Superior Court on October 29, 2015.

4  (Compl. at 1.)  On November 25, 2015, Defendants removed the action to this court on

5  the basis that Mr. Engler's complaint presented a federal question.  (Not. of Removal

6  (Dkt. # 1) at 1-2.)  Mr. Engler asserts three causes of action against each Defendant.

7  (Compl. ¶¶ 5.1-9.5.)  Against the City, Mr. Engler alleges a federal claim under 42

8  U.S.C. § 1983 and state law claims for breach of contract and conversion.  (*Id.*

9  ¶¶ 5.1-7.8.)  Against Wells Fargo, Mr. Engler also alleges a Section 1983 claim, as well

10  as state law claims for defamation of character and negligent infliction of emotional

11  distress.  (*Id.* ¶¶ 7.1-9.5.)  Wells Fargo filed counterclaims against Mr. Engler for

12  violations of Washington's anti-SLAPP statute.  (WF Am. Answer ¶¶ 10.12-10.13.)

13        The City moved for summary judgment on February 18, 2016, arguing that all

14  three of Mr. Engler's claims against the City should be dismissed.  (City Mot.)  On April

15  28, 2016, Wells Fargo moved for summary judgment against Mr. Engler as to all three of

16  his claims against Wells Fargo and Wells Fargo's anti-SLAPP counterclaim.  (Prior WF

17  Mot. (Dkt. # 40).)  The next day, on April 29, 2016, Wells Fargo filed a praecipe, which

18  supplanted its April 28, 2016, motion with the currently pending motion for summary

19  judgment.  (Praecipe (Dkt. # 45); WF Mot.)  The revised motion for summary judgment

20  sought the same relief on the same grounds as the prior motion but corrected several of

21  the prior motion's citations.  (Praecipe at 2.)  In fairness to Mr. Engler, the court renoted

22

1 | Wells Fargo's motion for summary judgment to correspond with an April 29, 2016, filing

2 | date and extended all deadlines accordingly. (*See* Dkt.)

3 |     The City's motion for summary judgment and Wells Fargo's motion for summary

4 | judgment, as amended, are now before the court.

5 | **III.   ANALYSIS**

6 | **A.   Legal Standard**

7 |     Summary judgment is appropriate if the evidence, when viewed in the light most

8 | favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

9 | any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

10 | P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of*

11 | *L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

12 | showing that there is no genuine issue of material fact and that he or she is entitled to

13 | prevail as a matter of law. *Celotex*, 477 U.S. at 323.  If the moving party meets his or her

14 | burden, then the non-moving party "must make a showing sufficient to establish a

15 | genuine dispute of material fact regarding the existence of the essential elements of his

16 | case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477

17 | F.3d at 658.  The non-moving party may do this by use of affidavits (or declarations),

18 | including his or her own, depositions, and answers to interrogatories or requests for

19 | admissions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

20 |     The court may only consider admissible evidence when ruling on a motion for

21 | summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-75 (9th Cir. 2002).

22 | "Legal memoranda and oral argument are not evidence and do not create issues of fact

1 │ capable of defeating an otherwise valid summary judgment." *Estrella v. Brandt*, 682

2 │ F.2d 814, 819-20 (9th Cir. 1982); *see also Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d

3 │ 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot

4 │ defeat summary judgment.").

5 │       The court is "required to view the facts and draw reasonable inferences in the light

6 │ most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

7 │ Only disputes over the facts that might affect the outcome of the suit under the governing

8 │ law are "material" and will properly preclude the entry of summary judgment. *Anderson*,

9 │ 477 U.S. at 248. The nonmoving party "must do more than simply show that there is

10 │ some metaphysical doubt as to the material facts . . . . Where the record taken as a whole

11 │ could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

12 │ issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting

13 │ *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As

14 │ framed by the Supreme Court, the ultimate question on a summary judgment motion is

15 │ whether the evidence "presents a sufficient disagreement to require submission to a jury

16 │ or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at

17 │ 251-52.

18 │       Mr. Engler's *pro se* status does not alter the applicability of these general

19 │ summary judgment rules. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (noting

20 │ that although the court construes pleadings liberally in their favor, *pro se* litigants "must

21 │ follow the same rules of procedure that govern other litigants"), *overruled on other*

22 │ *grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012); *Semper v. JBC Legal*

ORDER- 6

1  *Grp.*, No. C04-2240L, 2005 WL 2172377, at *1 (W.D. Wash. Sept. 6, 2005).  In order to

2  avoid summary judgment, a *pro se* litigant must present evidence in opposition to the

3  motion for summary judgment or otherwise demonstrate that there is a genuine dispute

4  regarding a material fact.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).  The

5  court must liberally construe any pleadings filed by a *pro se* non-moving party.  *Resnick*

6  *v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  The court, however, does not have a duty to

7  search for evidence that would create a factual dispute.  *See Carmen v. S.F. United Sch.*

8  *Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (describing it as fundamentally "unfair" to the

9  movant for the court to search the record on behalf of the non-moving party).

10  Accordingly, although Mr. Engler is appearing *pro se*, the court is obligated to hold him

11  to the same standards as it would any other non-moving party on a motion for summary

12  judgment.  Defendants bear the initial burden of showing there are no material factual

13  disputes; if they do so, the court is not required to create disputes where there is no

14  contrary evidence and may grant summary judgment in Defendants' favor.

15  **B.      Additional Discovery**

16          As a threshold matter, Mr. Engler makes several passing requests for additional

17  discovery.  (*See* Resp. to City at 2, 10; Resp. to WF at 5, 8.)  The court construes these as

18  requests that the court defer ruling on or deny both motions under Federal Rule of Civil

19  Procedure 56(d).  Rule 56(d) provides that:

20          If a nonmovant shows by affidavit or declaration that, for specified reasons,
        it cannot present facts essential to justify its opposition, the court may:  (1)
21      defer considering the motion or deny it; (2) allow time to obtain affidavits
        or declarations or to take discovery; or (3) issue any other appropriate
22      order.

Fed. R. Civ. P. 56(d).  A party requesting a continuance pursuant to Rule 56(d) "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).[3]

Of Mr. Engler's requests for additional discovery, the court can construe only one as identifying "specific facts." *See id.*  Mr. Engler requests "the video footage of the bank premises during the time of the incident," which he attests "will demonstrate that the call was made in bad faith." (Resp. to WF at 5.)  However, as Wells Fargo has indicated to Mr. Engler, the video footage was erased after 90 days pursuant to Wells Fargo's video retention policy.  (Spellman. Supp. Decl. (Dkt. # 51) ¶ 4; Engler Decl. at 5, Ex. B at 12 (providing Wells Fargo's response to Mr. Engler's requests for production, which indicates that "the surveillance video, if any ever existed, would have been erased after 90 days under the video retention policy").)  The alleged incident at Wells Fargo occurred on July 10, 2015, and Mr. Engler did not file this suit until October 29, 2015— more than 90 days after the incident.  (Compl. at 1, 3.)  Accordingly, the court concludes that the requested material does not exist.

Furthermore, as the court concludes herein, the surveillance video could not raise a genuine dispute of material fact as to Mr. Engler's claims. *See infra* § III.D.2.  As Mr. Engler argues, the video is potentially relevant to whether Mr. Walia placed the call to

---

[3] Although *Tatum* addresses Rule 56(f), the 2010 amendments to the Civil Rules renumbered Rule 56(f) as Rule 56(d) "without substantial change." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

ORDER- 8

1   the police in "good faith." (Resp. to WF at 5.) Good faith is only relevant to whether

2   Wells Fargo is entitled to anti-SLAPP statutory damages, and the court denies summary

3   judgment on that question herein. *See infra* § III.D.2.; *see also infra* n.9. More

4   generally, insofar as the court's conclusions herein are adverse to Mr. Engler, those

5   conclusions largely turn on determinations of law and not deficient factual development.

6        The court therefore finds no indication that the surveillance video actually exists

7   or that further discovery warrants a continuance and denies Mr. Engler's request to defer,

8   deny, or otherwise delay these motions on that basis.

9   **C.    Clarifying the Record Before the Court**

10       Mr. Engler submitted no timely evidence in support of his briefs opposing

11  summary judgment. (*See* Dkt.) On June 8, 2016, more than two weeks after Wells Fargo

12  submitted its reply brief in support of its motion for summary judgment, Mr. Engler filed

13  a declaration in support of his opposition to that motion. (Engler Decl. (Dkt. # 52).) That

14  declaration is procedurally improper in that it was filed more than three weeks after Mr.

15  Engler filed his opposition. (Resp. at 1.) Moreover, Wells Fargo received no opportunity

16  to respond to the testimony contained in that declaration. (*See* Dkt.)

17       Because Mr. Engler is proceeding *pro se*, the court "must consider as evidence in

18  his opposition to summary judgment all of [his] contentions offered in motions and

19  pleadings, where such contentions are based on personal knowledge and set forth facts

20  that would be admissible in evidence, and where [Mr. Engler] attested under penalty of

21  perjury that the contents of the motions or pleadings are true and correct." *Jones v.*

22  *Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *cf. Kitchens v. Pierce*, 565 F. App'x 590, 591

ORDER- 9

1   (9th Cir. 2014) (Wallace, J., dissenting from the denial of the petition for rehearing en

2   banc) (elaborating on how this rule interacts with the summary judgment standard).  Mr.

3   Engler makes no such attestation in his complaint or in either opposition brief.  (*See*

4   *generally* Compl.; Resp. to City; Resp. to WF.)  However, Mr. Engler states in his

5   untimely declaration that the statements made therein are "under penalty of perjury."

6   (Engler Decl. at 6.)  The majority of the facts that Mr. Engler attests to in his declaration

7   corroborate assertions that he made in his briefing or allegations he made in his

8   complaint.  (*Compare* Resp. to City *and* Resp. to WF *with* Engler Decl.)

9        To the extent the allegations in the complaint and the facts posited in Mr. Engler's

10   briefs are based on personal knowledge, would be admissible in evidence, and are

11   corroborated by Mr. Engler's untimely declaration, the court considers those assertions

12   herein as evidence for purposes of ruling on Defendants' motions.  *See Blanas*, 393 F.3d

13   at 923.  This approach assures that Mr. Engler has sworn to those statements under

14   penalty of perjury.  *See id.*  Further, the City and Wells Fargo mounted substantive

15   responses to Mr. Engler's opposition on the contingency that the court would accept as

16   evidence the factual assertions in Mr. Engler's opposition briefs.  (*See* City Reply (Dkt.

17   # 38) (arguing for one page that Mr. Engler presented no evidence and for the remaining

18   seven pages "crediting plaintiff's naked assertions, contrary to Fed. R. Civ. P. 56"); WF

19   Reply (Dkt. # 50) (arguing for one page that Mr. Engler presented no evidence and for

20   the remaining three pages based on the assertions Mr. Engler makes).)  Therefore, on the

21   unique facts and circumstances of this case, the court finds minimal prejudice to either

22

1 Defendant from treating Mr. Engler's submissions in this manner.[4]  This approach

2 accommodates Mr. Engler's *pro se* status and satisfies the purposes of the Ninth Circuit's

3 rule in *Blanas*, even though Mr. Engler has not perfectly complied with that case's

4 requirements.

5       Having clarified the factual record, the court proceeds to analyze Defendants'

6 motions for summary judgment.

7 **D.**    **Wells Fargo's Motion for Summary Judgment**

8       1.  Mr. Engler's Claim for Violation of 42 U.S.C. § 1983

9       Mr. Engler alleges that Wells Fargo violated Section 1983 by requiring him to

10 provide his fingerprint in order to cash his check. (*Id.* ¶¶ 7.1, 7.3-7.7.)  "Traditionally,

11 the requirements for relief under section 1983 have been articulated as: (1) a violation of

12 rights protected by the Constitution or created by federal statute, (2) proximately caused

13 (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947

14 F.2d 1418, 1420 (9th Cir. 1991).  A defendant has acted under color of state law where he

15 or she has "exercised power 'possessed by virtue of state law and made possible only

16 because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487

17 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  Conduct

18 that constitutes state action for purposes of the Fourteenth Amendment is action under the

19 color of state law for purposes of Section 1983. *Id.*

20

---

21     [4] In addition, the court notes that Defendants have not moved to strike Mr. Engler's

22 untimely declaration. (*See* Dkt.)  Moreover, even if the court declined to consider Mr. Engler's declaration, its conclusions herein would not change.

1    Construed liberally, Mr. Engler's allegations claim that Wells Fargo colluded with

2    the City to violate his Fourth Amendment right against unreasonable searches and

3    seizures (Compl. ¶ 7.4.1), his Fifth Amendment right against self-incrimination (*id.*

4    ¶¶ 7.4-7.5), and his Fifth and Fourteenth Amendment right against deprivation of

5    property without due process of law (*id.* ¶ 7.8).  Mr. Engler does not contend that Wells

6    Fargo is a government entity; rather, he argues that Wells Fargo's relationship with the

7    City renders it a state actor for purposes of Section 1983.  (*Id.* ¶ 7.3.)  A private person

8    can act "under color of state law" if he or she is a "willful participant in joint action with

9    the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  In other words, "[i]n

10   order for private conduct to constitute governmental action, 'something more' must be

11   present." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)

12   (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

13   "Courts have used four different factors or tests to identify what constitutes

14   'something more': (1) public function, (2) joint action, (3) governmental compulsion or

15   coercion, and (4) governmental nexus." *Id.* at 835-36.  Here, the City is merely a

16   customer of Wells Fargo.  (WF Am. Answer at 3.)   On the record before the court, no

17   fact, inference, or even argument supports a further connection between the City and

18   Wells Fargo.  If Mr. Engler could proceed with his Section 1983 claim against Wells

19   Fargo, any private actor with a government entity as a client could be sued under Section

20   1983.  This potentiality would contravene the requirement of "something more" in order

21   to sue private entities and eviscerate the state action requirement in Section 1983.  *See*

22   *Sutton*, 192 F.3d at 835 ("When addressing whether a private party acted under color of

ORDER- 12

1   law, we . . . start with the presumption that private conduct does not constitute

2   governmental action."). Because none of the four factors constituting "something more"

3   are present, the court concludes that Wells Fargo's action was not taken under color of

4   state law. Wells Fargo is therefore entitled to summary judgment on Mr. Engler's

5   Section 1983 claim.

6         Wells Fargo also moves this court for attorneys' fees and costs incurred in

7   defending against Mr. Engler's Section 1983 claim. (WF Mot. at 2.) This court has the

8   discretion to award attorneys' fees pursuant to 42 U.S.C. § 1988 to a prevailing civil

9   rights defendant if the plaintiff's action was "unreasonable, frivolous, meritless, or

10  vexatious." *Vernon v. City of L.A.*, 27 F.3d 1385, 1402 (9th Cir. 1994) (internal quotation

11  marks omitted). Defendants may only recover such costs and fees in "exceptional

12  circumstances," and the defendant bears the burden of establishing entitlement to those

13  fees and costs. *Harris v. Maricopa Cty. Sup. Ct.*, 631 F.3d 963, 971-72 (9th Cir. 2011).

14  Wells Fargo argues extensively that it is entitled to mandatory attorneys' fees and costs

15  under RCW 4.24.510. (*See* WF Mot. at 2, 18, 20-21); *see also infra* § III.D.2. However,

16  Wells Fargo merely requests attorneys' fees and costs under 42 U.S.C. § 1988 (*id.* at 2)

17  and acknowledges the court's discretion to grant such fees and costs under that statute

18  (*id.* at 20). The court concludes that Wells Fargo has not demonstrated that Mr. Engler's

19  action was unreasonable, frivolous, meritless, or vexatious, *see Vernon*, 27 F.3d at 1402,

20  and denies its request for attorneys' fees and costs in defending against Mr. Engler's

21  Section 1983 claim.

22

ORDER- 13

2. <u>Mr. Engler's Defamation of Character and Negligent Infliction of Emotional Distress Claims and Wells Fargo's Anti-SLAPP Counterclaim</u>

Mr. Engler alleges that Wells Fargo defamed his character and negligently inflicted emotional distress when its employee, Mr. Walia, called the Redmond Police. (Compl. ¶¶ 8.1-9.5.) Wells Fargo responds that it is absolutely immune from civil liability for this behavior under Washington's anti-SLAPP statute.[5] (WF Mot. (citing RCW 4.24.510).) Also pursuant to that statute, Wells Fargo seeks attorneys' fees, costs, and $10,000.00 in statutory damages. (*Id.*)

Wells Fargo argues that it is immune from civil liability for Mr. Walia's call to the police based on the following provision of Washington's anti-SLAPP statute:

> A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency . . . regarding any matter reasonably of concern to that agency . . . . A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

//

//

//

---

[5] In the alternative, Wells Fargo argues that the safe harbor provision of the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318(g)(3), entitles Wells Fargo to summary judgment. (WF Mot. at 19.) However, that federal statute applies to financial institutions and their employees reporting "suspicious transaction[s]." 31 U.S.C. § 5318(g); *see also Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1192 (11th Cir. 1997). Because there is no evidence in the record indicating that Mr. Walia called the police to report a suspicious transaction, as opposed to an unwanted trespasser, the court finds 31 U.S.C. § 5318(g)(3) inapplicable.

ORDER- 14

1  RCW 4.24.510.[6]  The communicator need not have acted in good faith in order to be

2  entitled to immunity under this statute.  *Bailey v. State*, 191 P.3d 1285, 1291 (Wash. Ct.

3  App. 2008).  Rather, Wells Fargo is immune so long as the information that Mr. Walia

4  provided "regard[s] any matter reasonably of concern to" the Redmond Police

5  Department.[7]  RCW 4.24.510.

6         Here, Mr. Walia called the Redmond Police Department on behalf of Wells Fargo,

7  his employer, to report an unwanted trespasser.  (Walia Decl. ¶ 2; 911 Call Table at 1.)

8  "There is no doubt that enforcement of the state criminal laws is a matter of concern for"

9  the relevant law enforcement office.  *Lowe v. Rowe*, 294 P.3d 6, 10 (Wash. Ct. App.

10  _____

11         [6] The Washington Supreme Court recently declared unconstitutional a separate section of
Washington's anti-SLAPP statute. *Davis v. Cox*, 351 P.3d 862, 874 (Wash. 2015) (invalidating

12  "RCW 4.24.525 as a whole").  That decision acknowledged and left intact the narrower,
longstanding provisions of RCW 4.24.510, under which Wells Fargo proceeds here. *Id.* at 865;

13  *see also Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 942 (9th Cir. 2013) (differentiating
between RCW 4.24.510 and RCW 4.24.525).

14
      [7] "'Person' is ambiguous in [RCW 4.24.510] and its meaning varies within the RCW."

15  *Segaline v. State, Dept. of Labor & Indus.*, 238 P.3d 1107, 1110 (Wash. 2010).  The court has
found no case directly addressing whether a for-profit corporation is a "person" under RCW

16  4.24.510.  *Cf. Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 46 P.3d 789,
796-97 (Wash. 2002) (holding that two citizens' groups operating as nonprofit corporations were

17  entitled to immunity under RCW 4.24.510).  The Washington Supreme Court has concluded that
a government agency is not a "person" for purposes of RCW 5.24.510 because "the purpose of
the statute is to protect the exercise of individuals' First Amendment rights," and "[a]

18  government agency does not have free speech rights." *Segaline*, 238 P.3d at 1110.  In contrast,
corporations do have First Amendment rights. *See Citizens United v. Fed. Election Comm'n*,

19  558 U.S. 310, 896-97 (2010).  Furthermore, Mr. Engler filed this lawsuit against Wells Fargo on
an implicit theory of vicarious liability.  (*See generally* Compl.)  Denying corporations immunity

20  for qualifying acts of their employees would disincentivize employees from reporting behavior to
law enforcement, thereby thwarting a primary purpose of RCW 4.24.510. *See Aronson v. Dog*

21  *Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1109 (W.D. Wash. 2010) ("The statute was enacted
to encourage the reporting of potential wrongdoing to governmental entities by protecting

22  reporting parties from the threat of retaliatory lawsuits.").  Accordingly, the court concludes that
Wells Fargo qualifies as a "person" under RCW 4.24.510.

1   2012) (holding that RCW 4.24.510 immunizes a defendant from civil liability for

2   requesting that the local sheriff notify the plaintiff that the plaintiff is no longer welcome

3   on the defendant's property).  The grounds on which Mr. Engler opposes anti-SLAPP

4   immunity are unpersuasive or inapplicable.  (Resp. to WF at 6-8.)  For example, based on

5   the statement of intent that accompanied the 2002 amendment to RCW 4.24.510, Mr.

6   Engler argues that his suit was not "filed with intent to stifle communication about any

7   'favorable government action, result, product, or outcome.'"  (Resp. to WF at 6-7 (citing

8   2002 Wash. Legis. Serv. ch. 232).)  However, that conclusory statement ignores the

9   language of the statute, as amended, which governs this action.  *See Bailey*, 191 P.3d at

10  1290-91 (rejecting an analogous argument that attempted to prioritize RCW 4.24.500,

11  which articulates the purpose of Washington's anti-SLAPP statute, over the language of

12  RCW 4.24.510).  Indeed, the 2002 amendment removed the requirement that the call be

13  placed in good faith in order for anti-SLAPP immunity to apply, broadening the absolute

14  protection afforded to callers relaying information "of concern" to a government agency.[8]

15  2002 Wash. Legis. Serv. ch. 232; RCW 4.24.510.

16      Mr. Engler also argues that even if the anti-SLAPP statute immunizes Wells

17  Fargo, there exists a disputed issue of fact regarding whether Mr. Walia acted "in bad

18  faith" when he called the police, and the court should therefore not award Wells Fargo

19  statutory damages.  (Resp. to WF at 8.)  Mr. Walia attests that he telephoned the police

20  _____

21      [8] In addition to removing the good faith requirement from the elements of anti-SLAPP
22  statutory immunity, the legislature added a $10,000.00 statutory damages provision that applies
    unless the communication was made in bad faith.  2002 Wash. Legis. Serv. ch. 232.

ORDER- 16

1   because Mr. Engler "refus[ed] to leave the premises when Wells Fargo would not cash

2   his check without two forms of identification." (Walia Decl. ¶ 2.)  The corresponding

3   police record corroborates that this statement tracks what Mr. Walia said to the

4   dispatcher. (911 Call Table at 1.)  However, Mr. Engler argues that Mr. Walia in fact

5   placed the call "to avoid dealing with an uncomfortable situation." (Resp. to WF at 7; *see*

6   *also id.* at 8 ("Wells Fargo's Manager, Japjee Walia, abused the power of the executive

7   by falsely reporting crime when no crime had occurred . . . . All of which is evidenced,

8   prima facie, by the fact that Plaintiff was neither detained, nor arrested, and no charges

9   were filed, and the RPD report indicates that no crime occurred.").)  Mr. Engler

10  elaborates on this version of events in his declaration, in which he characterizes his phone

11  conversation with Ms. Hood as "civil" and attests that Mr. Walia had an "oddly smug

12  look on his face" as he called the police.[9]  (Engler Decl. at 3.)

13          Granting Mr. Engler all reasonable inferences, a factfinder could reasonably

14  determine that the situation had deescalated, Mr. Engler was having a peaceable

15  conversation with Ms. Hood, and that Mr. Walia phoned the police out of animus, pride,

16  or another "bad faith" motivation.  *See* RCW 4.24.510.  This possibility does not alter the

17  applicability of anti-SLAPP immunity because an unwanted trespasser is a "matter

18  reasonably of concern to" the Redmond Police Department and there is no good faith

19  _____

20          [9] The court is also troubled by Wells Fargo's apparent deletion of the surveillance footage
    from the day in question.  Wells Fargo indicates that it "reasonably anticipated litigation" and
21  consulted in-house counsel as early as July 10, 2015, which is the date Mr. Engler attempted to
    cash his check. (Engler Decl. Ex. B at 2-3.)  However, Wells Fargo did not alter its standard
22  90-day deletion practice and preserve the video of that day. (*Id.* at 12.)  That video could have
    provided further insight into whether or not Mr. Walia telephoned the police in bad faith.

1   requirement for immunity to apply.  *Id.*; *see also Bailey*, 191 P.3d at 1291 (rejecting the

2   argument that bad faith communications do not implicate anti-SLAPP immunity).

3   However, Mr. Walia's motivation is a genuinely disputed issue of material fact pertaining

4   to whether Wells Fargo is entitled to statutory damages.  *See* RCW 4.24.510 ("Statutory

5   damages may be denied if the court finds that the complaint or information was

6   communicated in bad faith."); *Lowe*, 294 P.3d at 11 (reversing the trial court's award of

7   statutory damages on summary judgment because disputed issues of fact existed as to

8   defendant's motivation when he called the police).

9          The court concludes that Wells Fargo is entitled to summary judgment on the

10  ground that it is immune from suit under RCW 4.24.510.  This conclusion entitles Wells

11  Fargo to "recover expenses and reasonable attorneys' fees incurred in establishing the

12  defense."  RCW 4.24.510.  However, the court denies Wells Fargo summary judgment on

13  its claim for statutory damages because a genuine dispute of fact exists regarding Mr.

14  Walia's motivation in reporting Mr. Engler to the Redmond Police.

15  **E.      The City's Motion for Summary Judgment**

16          1.   Mr. Engler's Claim for Violation of 42 U.S.C. § 1983

17          Mr. Engler asserts a Section 1983 claim and alleges that the City violated his

18  Fourth and Fifth Amendment rights.  (Compl. ¶¶ 7.1-7.2, 7.4.1-7.8.)  The City moves for

19  summary judgment on the grounds that Mr. Engler cannot show conduct taken under

20  color of state law and, even if he could, his constitutional rights were not violated.  (City

21  Mot. at 11-14.)  The City may be held liable under Section 1983, but only if Mr. Engler's

22  constitutional rights were violated due to a policy or custom of the City.  *Monell v. Dep't*

1 │ *of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Board of Cty. Comm'rs of Bryan Cty., Okla. v.*

2 │ *Brown*, 520 U.S. 397, 403 (1997).

3 │      As the court concluded above, Wells Fargo and the City are not sufficiently

4 │ entangled to equate the acts or policies of Wells Fargo with the acts or policies of the

5 │ City—or vice-versa—for purposes of Section 1983 liability. *See supra* § III.D.1.

6 │ Accordingly, Mr. Engler's claim against the City fails as it pertains to Wells Fargo's

7 │ policy of requiring fingerprints to cash a check. (Compl. ¶¶ 7.1-7.2, 7.5-7.7.)  In all of

8 │ his filings with the court, Mr. Engler identifies only one pertinent City policy—returning

9 │ bail money via uncertified check.  Mr. Engler does not argue that this policy violates his

10 │ constitutional rights, and the City persuasively explains why its approach is prudent. (*See*

11 │ Keogh Decl. ¶ 4 (enumerating numerous persuasive reasons to deal in checks, including

12 │ traceability, documentation, security, and custom); Bernhardt Decl. (Dkt. # 32) ¶¶ 3-4

13 │ (same); Marler Decl. (Dkt. # 33) ¶¶ 3-4 (same).)  Furthermore, the City's policy is only

14 │ tangentially related to Mr. Engler's purported constitutional injuries, both of which

15 │ pertain to Wells Fargo's fingerprinting policy. (Compl. ¶¶ 7.4.1 (asserting that Wells

16 │ Fargo's fingerprinting policy violates the Fourth Amendment), 7.5 (asserting that Wells

17 │ Fargo's fingerprinting policy violates the Fifth Amendment), 7.8 (asserting that the City

18 │ deprived Mr. Engler of property without due process of law in violation of the Fifth

19 │ Amendment)); *see also Crumpton*, 947 F.2d at 1420 (listing proximate cause as one of

20 │ the elements of a Section 1983 claim).

21 │ //

22 │ //

ORDER- 19

1   It is clear that no City policy proximately caused the constitutional violations that

2   Mr. Engler alleges, and the court therefore grants the City summary judgment on Mr.

3   Engler's Section 1983 claim.

4       2.  Mr. Engler's Breach of Contract Claim

5   Mr. Engler claims that the City breached a contract with him by failing to pay him

6   in a particular manner.  (Compl. ¶¶ 5.1-5.7.)  A breach of contract claim requires the

7   plaintiff to prove four elements: duty, breach, causation, and damages.  *BP W. Coast*

8   *Prods. LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1121 (W.D. Wash. 2013) (citing *Baldwin*

9   *v. Silver*, 269 P.3d 284, 289 (Wash. Ct. App. 2011)).  The City contends that it is entitled

10  to summary judgment on the basis that Mr. Engler cannot present evidence of any of

11  these elements.  (City Mot. at 7-9.)

12  Even if the City owed Mr. Engler some sort of contractual or quasi-contractual

13  duty, there is no evidence from which a factfinder could infer that the City breached that

14  contract.  The City was under no obligation to furnish cash to Mr. Engler.  Mr. Engler

15  argues based on his complaint that he was also willing to accept "**secure payment** via

16  means such as a wire transfer, cashier's check or money order."  (Resp. to City at 4

17  (emphasis in original).)  Even ignoring the lack of factual support in the record for this

18  assertion, Mr. Engler's purported willingness to accept those forms of payment does not

19  obligate the City render reimbursement in a particular form.[10]  *See Lynott v. Nat'l Union*

20  _____

21  [10] Indeed, Mr. Engler's initial acceptance of the check makes clear that even Mr. Engler

22  did not view payment via check to breach any contractual duty until he experienced difficulty cashing the check on the terms he dictated to Wells Fargo.  (*See* Engler Decl. at 1-2.)

1  *Fire Ins. Co. of Pittsburgh, Pa.*, 871 P.2d 146, 149 (Wash. 1994) ("Unilateral or

2  subjective purposes and intentions about the meanings of [the contract] do not constitute

3  evidence of the parties' intentions."). Likewise, Mr. Engler's repeated, rebuffed requests

4  that City employees issue secure payment do not alter the City's contractual obligation, if

5  any existed. *Id.*; (*see also* Resp. to City at 4.)

6       Even if the City owed Mr. Engler some basic duty to repay him upon the

7  exoneration of Ms. Logan's bail, the City satisfied that duty. There is no indication the

8  City owed any further duty to reimburse Mr. Engler in a specific manner, and thus no

9  reasonable factfinder could find that the City breached a contract with him. Accordingly,

10 the court grants the City summary judgment on Mr. Engler's claim for breach of contract.

11      3. <u>Mr. Engler's Conversion Claim</u>

12      Mr. Engler alleges that the City "refuses to return" his property and claims that the

13 City is therefore liable for conversion. (Compl. ¶¶ 6.1-6.6.) The City responds that

14 Washington law establishes procedural prerequisites for tort claims against municipalities

15 that Mr. Engler has not performed and, in any event, that Mr. Engler's claim fails on its

16 merits. (City Mot. at 9-11.)

17      Even assuming Mr. Engler had satisfied the procedural prerequisites to bring a tort

18 claim against the City, the merits of his claim warrant summary judgment dismissal.

19 Conversion "occurs when a person intentionally interferes with chattel belonging to

20 another, either by taking or unlawfully retaining it, thereby depriving the rightful owner

21 of possession." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214, 1223

22 (Wash. 2009); *see also Potter v. Wash. State Patrol*, 196 P.3d 691, 696 (Wash. 2008)

1   (citing *In re Marriage of Langham & Kolde*, 106 P.3d 212 (2005)) ("Under our modern

2   jurisprudence, conversion is the unjustified, willful interference with a chattel which

3   deprives a person entitled to the property of possession." (internal quotations and

4   alterations omitted)).

5        The City has not taken or unlawfully retained Mr. Engler's chattel.  "[I]f a note or

6   an uncertified check is taken for an obligation, the obligation is suspended to the same

7   extent the obligation would be discharged if an amount of money equal to the amount of

8   the instrument were taken."  RCW 62A.3-310(b).  "In the case of an uncertified check,

9   suspension of the obligation continues until dishonor of the check or until it is paid or

10  certified."  RCW 62A.3-310(b)(1).  As Mr. Engler concedes, the City timely provided

11  Mr. Engler with an uncertified check for the full amount owed.  (Engler Decl. at 1-2; *see*

12  *also* Rosenberg Decl. ¶ C, Ex. C at 1.)  This suspended the City's obligation to Mr.

13  Engler, meaning the City legally ceased "retaining" Mr. Engler's chattel.  *See* RCW

14  62A.3-310(b).

15       Mr. Engler contends that Wells Fargo subsequently dishonored the check, which

16  would end the suspension of the City's obligation.  (*See* Resp. to City at 6.)  However,

17  dishonor requires that "presentment is duly made."  RCW 62A.3-502(a).  Presentment, in

18  turn, requires that Mr. Engler "give reasonable identification" when requested.  RCW

19  62A.3-501(b)(4).  Here, the undisputed facts demonstrate that Mr. Engler failed to

20  //

21  //

22  //

ORDER- 22

1  provide reasonable identification when prompted by a Wells Fargo employee.[11]  He

2  therefore failed to properly present the check, which means Wells Fargo could not have

3  dishonored it.  *See* RCW 62A.3-502(a).  Accordingly, the City's obligation remains

4  suspended, and the City has not unlawfully retained any of Mr. Engler's chattel.

5       The court grants the City summary judgment on Mr. Engler's claim for

6  conversion.[12]

## IV.   CONCLUSION

8       Based on the foregoing analysis, the court GRANTS the City's motion for

9  summary judgment (Dkt. # 29), GRANTS in part and DENIES in part Wells Fargo's

10  motion for summary judgment, and DISMISSES Mr. Engler's complaint WITH

---

12  [11] Mr. Engler contends that he "reasonably believes that, as nothing more than Plaintiff's
WA state issued driver's license was all that was [sic] required to surrender Plaintiff's property;
it should be all that is required to re-acquire Plaintiff's property." (Compl. ¶ 4.13.)  Mr. Engler's
subjective beliefs are not relevant to the reasonableness of Wells Fargo's policy.  Moreover,
given the underlying incentives, it is not unreasonable to require more identification from an
individual intending to receive payment than from an individual intending to provide payment.
The court concludes that fingerprints constitute "reasonable identification" for check-cashing
transactions presented by noncustomers.  *See Messing v. Bank of Am., N.A.*, 821 A.2d 22, 39
(Md. 2003) ("[T]he Thumbprint Program is part of an industry wide response to the growing
threat of check fraud . . . .  Prohibiting banks from taking reasonable steps to protect themselves
from losses could result in banks refusing to cash checks of non-customers presented over the
counter at all . . . ."); *Cockrell v. First Tenn. Bank*, No. 2:98-cv-02497-BBD, slip op. at 5-7
(W.D. Tenn. June 29, 1998) (dismissing the plaintiff's nearly identical conversion claim as
frivolous because "Plaintiff retain[ed] the checks in his possession" and "[f]ingerprinting has
long been recognized as a reasonable, valuable, and reliable means of identification . . . even
when the persons involved had no choice in the matter"); 11 Am. Jur. 2d *Bills & Notes* § 304
(2016) ("A bank's practice of requiring check presenters to provide a thumbprint signature
before honor a checking [sic] is a form of reasonable identification, even though a thumbprint
cannot be used, in most instances, to confirm immediately the identity of a presenter when the
check is presented.").

21  [12] Because the court grants summary judgment to Defendants on all of Mr. Engler's
claims, the court also concludes Mr. Engler is not entitled to injunctive relief.  (*See* Compl. at
22  12-13; City Mot. at 14-16; WF Mot. at 10-11.)

1  PREJUDICE.  Wells Fargo's anti-SLAPP counterclaim for statutory damages remains for

2  trial.

3          In addition, pursuant to Washington's anti-SLAPP statute, RCW 4.24.510, the

4  court GRANTS Wells Fargo's request for expenses and reasonable attorneys' fees

5  incurred in establishing its anti-SLAPP defense.  Wells Fargo may submit its motion for

6  such expenses and fees following final disposition of its counterclaim for statutory

7  damages.

8          Dated this  19  day of June, 2016.

9

10                                         JAMES L. ROBART

11                                         United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER- 24